HOOD, Judge.
Pierre LeBlanc instituted this suit against Dr. John C. Greco to recover sums alleged to be due him for training defendant’s race horses. Greco reconvened, seeking to recover damages from plaintiff. Le-Blanc then filed other pleadings, including an exception of prescription to Greco’s re-conventional demand.
Trials were held on the exception of prescription and on the merits, and thereafter the following judgments were rendered by the trial court on August 24, 1976: (1) Judgment in favor of plaintiff and against defendant sustaining the exception of prescription filed by LeBlanc; and (2) judgment in favor of plaintiff and against defendant, condemning defendant to pay to plaintiff the sum of $5,944.45, and dismissing Greco’s reconventional demands. Greco has appealed from both of those judgments.
The issues presented are whether the claims asserted by Greco in his reconven-tional demand have prescribed; whether Greco is entitled to recover damages from LeBlanc; and alternatively, whether defendant is entitled to assert his claims for damages as a set off or as compensation against plaintiff’s demands.
We have decided that the evidence fails to support the reconvenor’s demands for damages against plaintiff, and that it also fails to establish that Greco is entitled to a set off against the claim urged by LeBlanc. Having reached those conclusions, it is unnecessary for us to consider the question of whether the trial court erred in sustaining the exception of prescription filed to Gre-co’s reconventional demand.
LeBlanc is a horse trainer in Lafayette. Pursuant to an agreement entered into between him and defendant, he trained race horses for defendant Greco from 1970 until 1974. He instituted this suit against defendant to recover the sum of $5,944.45, that being the amount alleged to be owed to him by Greco for training the above horses.
On this appeal, Greco does not question the correctness of the account which was submitted by plaintiff for training the horses. Defendant Greco filed a reconventional demand, however, in which he asserts the following claims against LeBlanc: (1) For damages in the amount of $15,000.00 for injuries to a horse owned by Greco, which injuries were suffered by the horse while it was being loaded on a trailer by plaintiff’s agents or employees; (2) for damages in the amount of $4,200.00, because of the alleged failure of LeBlanc to properly handle registration certificates for horses owned by defendant; (3) for damages in the amount of $500.00 for failing to properly train a gelding owned by defendant; and (4) for damages in the amount of $1,920.00 for plaintiff’s breach of contract in failing to properly train two mares and for his negligence in running those mares in races.
*869 We consider each of the above claims separately.

Injury to Horse

Shortly before October 6, 1972, Greco asked LeBlane to send someone to Texas to pick up three of Greco’s fillies and to transport them to LeBlanc’s farm in Lafayette for training. In response to that request LeBlane sent his employee, Russell Louvi-ere, to the Vincent Farm, near Bridge City, Texas, on the above date, to pick up and transport the three horses to Lafayette. Louviere’s cousin, who was not an employee of LeBlane, accompanied Louviere to Texas for that purpose. Soon after their arrival on the farm, two of the horses were loaded into plaintiff’s trailer without difficulty. The third filly fell as it was being loaded into the trailer, and as a result of that fall it sustained permanent injuries to its hip or leg. The horse nevertheless was loaded into the trailer and was hauled to Lafayette without further mishap after that injury was sustained.
Defendant Greco claims in his reconven-tional demand that he is entitled to recover damages from plaintiff LeBlane, alleging that the accident which resulted in injuries to his horse was caused by the negligence of LeBlanc’s employees, and that LeBlane also breached his oral contract to deliver the horse safely to Láfayette.
Louviere’s cousin did not participate in getting the horses loaded into the trailer. Three other persons participated in the loading operations, however, none of whom was an employee of plaintiff. They were Charles Thermon, Clarence LeBlane and Mrs. Jerry Vincent. Thermon was an experienced horse trainer, and he was not employed by either of the parties to this suit or by the Vincent Farm. He was familiar with the three horses which were being loaded into the trailer, and he particularly was familiar with the horse which was involved in the accident.
The filly which was injured during the loading operations was nervous, and she resisted the attempts of Louviere and others to get her into the trailer. Louviere got inside the trailer, and he attempted to lead the horse into it by pulling on a leather shank attached to a halter on the horse’s head. Thermon and LeBlane tied a rope to the left rear part of the trailer, wrapped the rope around the back of the horse and they then pulled the rope tight against the rear of the animal, for the purpose of inducing the filly to enter the trailer. Mrs. Vincent stationed herself behind the horse and waved her arms in an attempt to scare or drive the horse into the trailer. While those attempts were being made to get the horse to enter the trailer, the horse slipped and fell, causing the above injury to its hip or leg.
Thermon testified in behalf of defendant Greco. Although he denied taking an active part in the loading operations, the evidence convinces us that he did actively participate to the extent above shown. He conceded that the method used in attempting to get the horse into the trailer “was a normal way to do it.”
It is unfortunate that the horse slipped and fell while the above attempts to load it into the vehicle were being made. We conclude, however, as the trial judge obviously did, that Louviere was not negligent in his attempts to load the injured filly into the trailer. The evidence shows that he performed the duties assigned to him in loading and transporting the filly in a proper, normal and accepted manner.
We find no error in that part of the trial court’s judgment which rejects Greco’s claim for damages because of the injuries suffered by the above horse. We also conclude that Greco is not entitled to a set off or to compensation against plaintiff’s claim because of the above injuries to that horse.

Handling of Registration Certificates

In 1971 Greco sent three thoroughbred horses to LeBlane for the purpose of having the horses offered for sale at the Louisiana Breeder’s Sale which was scheduled to be held in New Orleans. The understanding was that if the horses did not attract a high price, they would not be sold but would be *870 returned to LeBlanc’s farm to be trained for racing. At or about the time the horses were taken to that sale, Greco mailed the registration certificates pertaining to those horses to the proper officials of the Louisiana Breeder’s Sale, in New Orleans. The evidence shows that registration certificates must be produced in order for thoroughbred horses to be sold or entered in races.
The horses did not attract a high price at the sale, so LeBlanc “bought them in,” as Greco’s agent. Our understanding of the transaction which took place at that time was that the ownership of the horses did not change. Dr. Greco continued to own them. He simply used that method of assuring himself that the horses would not be sold unless they brought at least the minimum price for which he was willing to sell them. The allegations in his reconventional demand and his testimony at the trial make it clear that both parties considered Greco to be the owner of the horses after the above transaction took place.
Shortly after it was determined that the horses could not be sold at a high price, Greco paid the fee or commission which he owed the sales officials, and he instructed LeBlanc to bring the horses back to Lafayette. LeBlanc thereupon brought the three horses back to his farm in Lafayette and began training them for racing, all pursuant to his agreement with Greco. Le-Blanc did not pick up the registration certificates for these horses when he left New Orleans, and he thus did not have those certificates while the training operations were being conducted. He trained the horses on his farm for seven months. He conceded that ordinarily it does not require seven months to train a horse, but he testified that some horses do not learn as quickly as others do and that it required that long to train these particular fillies. He stated that after that time he asked Greco to send the registration certificates to him so he could enter the horses in races, and that Greco told him that he would “attend to it.” He said that he received the certificates from Greco about two months later, and that the horses were entered in races after that time.
Greco testified that after the horses had been trained for seven months, he contacted LeBlanc to inquire why they were not being raced, and that he learned at that time that LeBlanc had not obtained the registration certificates; He contends that it was Le-Blanc’s duty to obtain the certificates when he left New Orleans with the horses, and that he was negligent in having failed to do so. Greco takes the position that because of LeBlanc’s negligence in that respect the horses could not be raced during the last month of races in New Orleans, that Le-Blanc kept the horses on his farm for a longer period of time than was necessary (7 months), and that the charges made by LeBlanc for training the horses thus are excessive. Greco claims that he sustained damages in the amount of $4,200.00 as the result of LeBlanc’s negligence.
The trial judge obviously concluded that LeBlanc either was not negligent in failing to obtain the registration certificates earlier, or that Greco sustained no damages as a result of the delay. We cannot say that he erred in either of those findings. It is apparent that Greco kept the registration certificates in his possession before the horses were taken to New Orleans to be sold, since the evidence shows that Greco himself mailed the certificates to the sales officials at that time. The ownership of the horses did not change, and after the hoped-for sale failed to take place Greco instructed plaintiff to return the animals to Lafayette. Considering all of the circumstances, we think LeBlanc was justified in assuming that Greco would recover the certificates from the sales officials, and that he would continue to keep them in his possession. We find no fault or negligence on the part of LeBlanc in failing to obtain the registration certificates when he left New Orleans with the horses. The evidence also fails to show that LeBlanc subjected the horses to a longer period of training than was necessary before he attempted to enter them in races.
Our conclusion is that there is no error in that part of the trial court’s judgment *871 which rejects Greco’s demand for this item of damage.

Failure to Properly Train Gelding

On or about January 1,1973, Greco sent a gelding, named “Mr. A.P.,” to plaintiff’s farm for training. LeBlanc thought the colt was two years old, and he trained it at his farm from January 1, to March 24,1973, at a charge of $7.00 per day. He then trained the colt at the race track from March 25, until June 1,1973, at a charge of $12.00 per day. On or about the last mentioned date Greco informed plaintiff that the colt was only a yearling, and the animal was then removed from the track and returned to plaintiff’s farm. The evidence shows that the horse could not be raced until it was two years old, and that the additional cost of training it at the race track in 1973 was an unnecessary expense.
Greco argues that he relied on plaintiff’s judgment, as an expert, to train the gelding properly, and that LeBlanc was negligent in failing to determine that the colt was a yearling and in incurring the additional and unnecessary expense of training it at the race track. He claims damages, or a set-off, in the amount of $500.00 as the result of plaintiff’s alleged negligence, his demand being based solely on the contention that an unnecessary expense was incurred in training the colt.
The evidence shows that LeBlanc was not informed of the age of the colt when it was placed in his care. He nevertheless examined it and concluded, erroneously, that it was a two year old. He thereupon proceeded to train it as such. He did not know until he was told by Dr. Greco that it was only a yearling, and he then returned it to the farm immediately where the care and training of it was less expensive. The training of the colt at the race track did not injure the animal in any way. We find nothing in the evidence to support a holding that a trainer is negligent if he errs in determining the age of a colt such as this one.
The burden of proof rests on defendant Greco to establish LeBlanc’s negligence. We have concluded that the evidence does not show that plaintiff was negligent in failing to determine that the colt was a yearling at the time it was placed in his care. It would be just as logical, according to the evidence, to conclude that Greco was at fault in failing to inform LeBlanc as to the age of the colt when he placed it in plaintiff’s care. We think Greco has failed to meet the burden of proof which rests on him of showing negligence on the part of plaintiff in this respect.

Failure to Properly Train Two Mares

Greco argues, finally, that he is entitled to recover damages from plaintiff because of the latter’s failure to properly train two mares owned by Greco, and because of his negligence in entering those mares in races where there was no hope that they could win.
The evidence shows that LeBlanc trained two mares, named I. Angelina and Mattiola, for Greco. He entered them in several races at Evangeline Downs during the summer of 1973, but the mares did not win any races during that period. Greco contends that the mares were sore at the time of each race, indicating that they were not properly trained. He also claims that Le-Blanc should have discontinued racing them and returned them to his farm after they lost several races, and that his charges for training the mares were excessive because of his failure to remove the horses from the race track.
LeBlanc explained that the mares were in good condition, that they were good runners and that he thought they could win. He stated that he entered them in several races because he wanted to win races for Dr. Greco, and that he felt that either or both of the mares eventually would win. He denied that the horses were sore or were improperly trained. A jockey testified that he had ridden Mattiola three times in races, that he liked to ride that horse, that it was not handicapped by soreness, and that he thought the mare was in good condition and had the ability to win.
*872 The evidence convinces us that the two mares were properly trained, that they were capable of winning races and that LeBlanc did not abuse the trust which Gre-co had placed in him by entering those horses in several races, despite the fact that they did not win. The trial judge, therefore, correctly rejected Greco’s demand for this item of damages.

Conclusion

We find, as did the trial judge, that defendant Greco is indebted to plaintiff for the sum of $5,944.45 for services rendered and materials furnished in connection with the training, boarding and transporting of race horses owned by defendant. The evidence fails to establish that LeBlanc is indebted to Greco for any of the damages or amounts claimed by Greco in his reconven-tional demand. Since the evidence does not show that LeBlanc is indebted to Greco, we conclude that defendant is not entitled to a set-off or to compensation for any of the amounts claimed by him in his reconven-tional demand. In view of those conclusions, it is unnecessary for us to consider whether the reconventional demands urged by defendant are barred by prescription.
For the reasons assigned, the judgments appealed from are affirmed. The costs of this appeal are assessed to defendant-appellant.
AFFIRMED.